DAYTON SPORTS CENTER, INC., Appellant,

v.

9–BALL, INC., d.b.a. BHA Billiards, Appellee.

[Cite as *Dayton Sports Ctr., Inc. v. 9–Ball, Inc.* (2001), 141 Ohio App.3d 402.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18327.

Decided Feb. 16, 2001.

*Don A. Little,* for appellant.

*Scott G. Oxley* and *P. Christian Nordstrom,* for appellee.

---

FAIN, Judge.

Plaintiff-appellant Dayton Sports Center, Inc. appeals from a summary judgment rendered against it on its claims for damages stemming from allegations of false and deceptive advertising. It contends that the trial court erred by dismissing its claims for violation of the common law, the Lanham Act, Section 1125(a) Title 15, U.S.Code, and the Ohio Deceptive Trade Practices Act, R.C. Chapter 4165.

We conclude that the trial court did not err by dismissing both the common-law and Ohio Deceptive Trade Practices Act claims, as Dayton Sports failed to assert a cause of action arising therefrom. However, we also conclude that a genuine issue of fact exists as to whether Dayton Sports has presented a claim that is actionable under the provisions of the Lanham Act. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

## I

Dayton Sports and the defendant-appellee, 9–Ball, Inc., d.b.a. BHA Billiards ("BHA"), are businesses located in Montgomery County, Ohio. Both companies are involved in the sale of pool tables and related equipment. Dayton Sports sells, exclusively, Olhausen products, while BHA sells only Brunswick products.

Dayton Sports filed a complaint against BHA alleging that BHA had engaged in false and deceptive advertising. The complaint further alleged that BHA had violated Ohio common law, the federal Lanham Act, the Ohio Deceptive Trade

Practices Act, and the Ohio Consumer Sales Practices Act. BHA filed an answer and a motion to dismiss pursuant to Civ.R. 12(B)(6).

BHA deposed the owner of Dayton Sports, Barry Weaver. The deposition was then filed of record in support of a motion for summary judgment filed by BHA in March 2000. The deposition and its attached exhibits reveal that the false advertising claim is based upon the following three statements made by BHA in its commercial advertisements: (1) BHA has been family-owned since 1949; (2) BHA is Ohio's largest Brunswick distributor; and (3) Brunswick is "the World's Leader in Billiards."

The trial court dismissed the claim for violation of the Ohio Consumer Sales Practices, pursuant to the Civ.R. 12(B)(6) motion filed by BHA. The trial court then rendered summary judgment in favor of BHA on the remaining claims. Dayton Sports appeals solely from the trial court's decision granting summary judgment.

## II

The first assignment of error states as follows:

"The trial court erred in granting appellee summary judgment on appellant's claim that appellee's misrepresentations constituted unfair trade practices and deceptive acts under the Ohio common law."

Dayton Sports contends that the trial court erred by dismissing its common-law causes of action.

In its motion for summary judgment, BHA relied upon a treatise for the assertion that, other than an action for "palming off" (a false representation by a business that its goods are those of a competitor), there is no common-law cause of action with regard to false or deceptive advertising. See, Collin, Ohio Business Competition Law (1994) 120, Section 4.3. In its response, Dayton Sports argued that BHA failed to cite any statute or case to support its argument that no common-law cause of action exists for false and deceptive advertising, and that BHA's reliance upon a treatise should not be held to prevent Dayton Sports "from establishing a claim for unfair and deceptive trade practices under the common law."

■ In its appellate brief, Dayton Sports cites *Worthington Foods, Inc. v. Kellogg Co.* (S.D.Ohio 1990), 732 F.Supp. 1417, for the proposition that Ohio does recognize common-law claims for deceptive trade practices. We have reviewed the *Worthington Foods* case and we conclude that its holding is limited to cases involving trademarks. *Worthington Foods* at 1431. Furthermore, despite our research, we have not found, and Dayton Sports has not pointed to, any basis for a common-law action under the facts of this case. Therefore, we conclude that

the trial court did not err, as a matter of law, by granting summary judgment on this issue.

Accordingly, the first assignment of error is overruled.

### III

The second assignment of error provides as follows:

"The trial court erred in granting appellee summary judgment on appellant's claim that appellee's misrepresentations constituted unfair trade practices and deceptive acts under the Lanham Act, 15 U.S.C.A. § 1125(a)."

Dayton Sports contends that the trial court erred by dismissing its claims for violations of the Lanham Act. It argues that BHA failed to place in dispute the factual allegations contained in its complaint because it did not present any evidentiary material to show that the subject advertising was not false and deceptive.

The Lanham Act, also known as the Trademark Act of 1946, is codified at Section 1051 *et seq.*, Title 15, U.S. Code. The portion of the Act relevant to this case is Section 43(a) (Section 1125[a], Title 15, U.S.Code), which protects against false advertisement and trademark infringement and provides:

"(a) Civil Action. (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

"(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

"(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

"shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

Our review of the appropriateness of summary judgment is *de novo.* The standard of review in summary judgment cases is well established. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence

construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204.

■ We begin with the statement that BHA is "Ohio's largest" distributor of Brunswick products. We note that in Barry Weaver's deposition, he testified that he was aware that BHA is not in the "top twenty of Brunswick dealers," while a store located in Canton, Ohio, is. It follows from his testimony, then, that BHA is not the largest seller of Brunswick products in the state of Ohio. This testimony creates a genuine issue of fact as to the truthfulness of the statement that BHA is Ohio's largest distributor of Brunswick products.

We next turn to the claim that BHA has been family-owned since 1949. Dayton Sports contends that this statement implies that BHA has been in the billiards business since 1949 and that it has been owned by one family since that time. However, according to Dayton Sports, BHA has been owned by two different families during that time and has only been in the billiards business for a few years.

After reviewing the record before us, including copies of the display advertising as it was laid out, we conclude that this statement is capable of being reasonably construed to mean that BHA has been in the billiards business since 1949 and that there has been a continuity of family ownership since that time. The very reason that this would be of interest to a potential consumer is that the consumer might take comfort in the family's commitment to the community and its familiarity with billiard tables. If, as BHA argues, these statements were intended to convey only that BHA, since 1949, has been in business of some kind, unrelated to billiard tables, and has been owned by two or more families, this would not seem likely to be of much interest to potential customers.

■ Finally, we turn to the statement that Brunswick is "The World's Leader in Billiards." We find that this claim is a general assertion, or exaggerated claim, of superiority; constituting "puffery," which is not actionable under the Lanham Act. *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv., Inc.* (C.A.9, 1990), 911 F.2d 242.

When the evidence in the record is construed in a light most favorable to Dayton Sports, we conclude that the first two statements might be found to be misleading concerning BHA's commercial activities. Specifically, a consumer might be persuaded that because BHA has been a family-owned concern in the business of selling billiard tables since 1949, and the largest Ohio distributor of the "world's leader in billiards," it might offer superior and more trustworthy service and advice concerning its products. Thus, a reasonable juror might find that a consumer might be persuaded to purchase from BHA based upon this advertising. Therefore, if the advertising is proven false and can be proven to be

the cause of Dayton Sports' loss of sales and customers, a reasonable jury might find that these statements violate the Lanham Act.

Accordingly, the second assignment of error is sustained.

## IV

The third assignment of error provides:

"The trial court erred in granting appellee summary judgment on appellant's claim that appellee's misrepresentations constituted unfair trade practices and deceptive acts under the Ohio Deceptive Sales Practices Act [Chapter] 4165, Ohio Revised Code."

■ Dayton Sports contends that the trial court improperly dismissed its claim for violation of the Ohio Deceptive Trade Practices Act.

The Ohio Deceptive Trade Practices Act is codified at R.C. 4165.01 *et seq.* R.C. 4165.02, which sets forth the conduct that constitutes a violation of Act, provides:

"(A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:

"(1) Passes off goods or services as those of another;

"(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

"(3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

"(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;

"(5) Lists a fictitious business name in a local telephone directory that is published on or after the effective date of this amendment * * *;

"(6) Lists a fictitious business name in a directory assistance database on or after the effective date of this amendment * * *;

"(7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

"(8) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

"(9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

"(10) Disparages the goods, services, or business of another by false representation of fact;

"(11) Advertises goods or services with intent not to sell them as advertised;

"(12) Makes false statements of fact concerning the reasons for, existence of, or amounts of price reductions;

"(13) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity. * * *"

The parties refer us to several cases that they argue stand for the proposition that in determining claims for violation of this Act, courts use the same analysis used for violations of the Lanham Act. See, *e.g., Cesare v. Work* (1987), 36 Ohio App.3d 26, 520 N.E.2d 586, and *Yocono's Restaurant, Inc. v. Yocono* (1994), 100 Ohio App.3d 11, 651 N.E.2d 1347. They argue that our conclusions regarding any violation of the Lanham Act will be dispositive of the claimed violation of the Ohio Act.

We have reviewed the cited cases and find that they involve trademarks and are not determinative of the issue in this case. We have also reviewed the Ohio Act and find no portion of that statute applicable to the facts of this case. Furthermore, Dayton Sports has failed to cite any provision contained in the Act that it claims applies to this action. Accordingly, we find that the trial court's decision to dismiss this claim, albeit on different grounds, was not error as a matter of law.

The third assignment of error is overruled.

## V

The second assignment of error having been sustained, and Dayton Sports' other assignments of error having been overruled, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings in connection with Dayton Sports' Lanham Act claims.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

BROGAN and GRADY, JJ., concur.