BLANKENSHIP

v.

CFMOTO POWERSPORTS, INC. et al.

2011-Ohio-948.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2009 CVH 1340.

Decided Jan. 24, 2011.

6

Burdge Law Office Co., L.P.A., and Elizabeth Wells, for plaintiff.

Dinsmore & Shohl, L.L.P., and H. Toby Schisler, for defendants.

---

HADDAD, Judge.

{¶ 1} This matter came before the court pursuant to a partial motion for judgment on the pleadings, filed by the defendants, CFMOTO Powersports, Inc., HH Motor Sports, L.L.C., and Zhejiang CFMOTO Power Co., Ltd., on April 2, 2010. The defendants renewed their motion on June 17, 2010, after the plaintiff filed a second amended complaint on June 10, 2010. The court held a hearing on the matter on August 16, 2010.

{¶ 2} The court would note that pursuant to an agreement discussed on the record in a separate hearing, held on May 18, 2010, the parties stipulated that the plaintiff, in his individual capacity, is the prevailing party on Counts One through Four of the First Amended Complaint. The parties further stipulated that the only issue to be determined by the court at a later date on these claims is damages, including reasonable attorney fees. Additionally, on July 14, 2010, the plaintiff filed a notice of voluntary dismissal of the Class Claims Seven through Thirteen, without prejudice. Therefore, the only claims remaining that are subject to the defendants' motion for partial judgment on the pleadings are Counts Five and Six. As to Count Five, there is pending before the court a motion to certify the fifth claim as a class action, filed by the plaintiff on April 6, 2010. This motion shall remain pending until the current motion for partial judgment on the pleadings is resolved.

{¶ 3} Having heard oral arguments on the defendants' motion for partial judgment on the pleadings, the court took the matter under advisement and now renders the following decision.

## FINDINGS OF FACT

{¶ 4} For purposes of this decision, the court will address only the facts relevant to Counts Five and Six of the second amended complaint, since those are the only claims that remain.

{¶ 5} This case involves a 2008 CFMOTO CF250T–V5 motorcycle that was manufactured, warranted, and/or distributed by Zhejiang CFMOTO Power Co., Ltd. and CFMOTO Powersports, Inc. This product was sold retail and repaired under warranty by HH Motor Sports, L.L.C. The plaintiff alleges that the motorcycles were equipped with a rear-brake system designed, intended, and/or used on the lower-powered and lower-speed scooters that the company also manufactures. Essentially, the motorcycle was equipped with a hand-brake

rather than a foot-brake. It is alleged that this braking system violates federally mandated rear-brake safety standards for motorcycles. The plaintiff alleges that when he purchased this motorcycle from the dealer, he thought he was getting a safe and reliable vehicle; however, the motorcycle is unsafe to drive. It is also alleged that the defendants failed to distribute with the motorcycles the mandatory Ohio Lemon Law Rights written notice that is required by Ohio law.

{¶ 6} In relation to Count Five, the Consumer Sales Practices Act ("CSPA"), the plaintiff alleges that (1) the Chinese manufacturer failed to build any motorcycles in this entire line that would comply with U.S. federal rear-brake safety standards for a properly functioning rear-brake system, including the sub-issues of a vehicle recall, false representations and marketing, and so forth, and (2) the Chinese manufacturer failed to comply with Ohio's CSPA when it distributed the motorcycles without the Ohio Lemon Law Rights notice. The plaintiff is pursuing these claims in a class-action suit. The plaintiff alleges that this conduct constitutes unfair and/or deceptive consumer sales practices in violation of R.C. 1345.02 because the defendants represented through advertising and other marketing communications that the vehicles were new and free from defects and could be driven safely in normal operation. It is alleged that instead, the vehicles were not of the "standard, quality, or grade" that they were represented and/or advertised to be. Therefore, the plaintiff is seeking relief on behalf of himself and the class pursuant to R.C. 1345.02(B)(1), 1345.02(B)(2), 1345.02(B)(5), 1345.02(B)(9), and 1345.02(B)(10). Further, in support of this claim, the plaintiff cites *Pearn v. DaimlerChrysler Corp.*, 148 Ohio App.3d 228, 2002-Ohio-3197, 772 N.E.2d 712; *Brown v. Lyons* (1974), 43 Ohio Misc. 14, 72 O.O.2d 216, 332 N.E.2d 380; *Layne v. McGowen* (Nov. 14, 1997), Montgomery App. No. 16400, 1997 WL 705480, and *Fribourg v. Vandemark* (July 29, 1999), Clermont App. No. CA99–02–017, 1999 WL 552741. The plaintiff is pursuing this claim as a class action.

{¶ 7} The plaintiff specifically does not allege a claim for violation of R.C. 1345.72.

{¶ 8} In relation to Count Six, the Ohio Deceptive Trade Practices Act ("DTPA"), the plaintiff alleges that the defendants' conduct violated R.C. 4165 because the defendants made false statements of fact concerning the vehicles that the plaintiff purchased. It is alleged that the plaintiff would not have purchased the vehicle had he otherwise known of the "unreasonably dangerous violative rear brake system" used on the motorcycles. It is alleged that the defendants did one or more of the following: (1) caused likelihood of confusion or misunderstanding as to the approval or certification of goods; (2) represented that goods had approval, characteristics, uses, or benefits that they did not have; (3) represented that goods were of a particular standard, quality, or grade, or that goods were of

a particular style or model if they are of another; and (4) advertised goods with intent not to sell them as advertised. Again, the plaintiff is pursuing this claim as a class action.

{¶ 9} The defendants filed a motion for partial judgment on the pleadings on April 2, 2010. They then filed a renewed motion for partial judgment on the pleadings on June 17, 2010, after the plaintiff filed his second amended complaint. The motion addresses Counts Five through Thirteen; however, since Counts Seven through Thirteen have been dismissed, the court will consider the defendants' motion as it relates to Counts Five and Six only.

## THE LEGAL STANDARD

{¶ 10} "A Civ.R. 12(C) motion for judgment on the pleadings presents only questions of law." *Landwehr v. Batavia*, 173 Ohio App.3d 599, 2007-Ohio-6035, 879 N.E.2d 824, ¶ 6, citing *Fontbank, Inc. v. CompuServe, Inc.* (2000), 138 Ohio App.3d 801, 807, 742 N.E.2d 674. In determining a motion under Civ.R. 12(C), the court must construe all material allegations in the complaint and draw all reasonable inferences therefrom in favor of the nonmoving party. *Landwehr* at ¶ 6, citing *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931. The court must then find "beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief." *Feagin v. Mansfield Corr. Inst.*, Franklin App. No. 07AP–182, 2007-Ohio-4862, 2007 WL 2729421, ¶ 6, citing *Walk v. Ohio Supreme Court*, Franklin App. No. 03AP–205, 2003-Ohio-5343, 2003 WL 22290209, ¶ 5. "When the face of a complaint indicates that it is statutorily barred, judgment on the pleadings is properly entered." *Feagin* at ¶ 12, citing *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 174, 63 O.O.2d 262, 297 N.E.2d 113. The court would note that unlike a Civ.R. 12(B)(6) motion, which permits a review of only the complaint, a Civ.R. 12(C) motion permits consideration of both the complaint and answer. *Pontious* at 569. See also *Feagin* at ¶ 10.

## LEGAL ANALYSIS

{¶ 11} Initially, the court notes that the defendants assert that the plaintiff and proposed class members lack standing because there has been a failure to allege an actual injury. However, the CSPA provides for "actual economic damages," which means "damages for direct, incidental, or consequential pecuniary losses resulting from a violation of Chapter 1345 * * *." R.C. 1345.09(G). Further, a consumer "may seek * * * an injunction * * * against an act or practice that violates this chapter." R.C. 1345.09(D). In the complaint, the plaintiff and proposed class members have requested injunctive relief and damages in an amount to be proven at trial. While it is true that in most tort

actions, one cannot be compensated for economic harm, the CSPA expressly provides recovery for economic injury. Further, the CSPA expressly provides for injunctive relief. For this reason, the court finds that the plaintiff and proposed class members need not allege an actual physical injury, but are instead required under the CSPA to allege some type of injury, whether economic or noneconomic, and/or to request injunctive relief. The CSPA is designed to assure that consumers will recover "any damages" caused by deceptive acts or practices. *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 13. All forms of compensatory relief are allowed. Id. at paragraph one of the syllabus. Therefore, the court finds that the plaintiff and proposed class members have alleged a type of injury provided for under the CSPA; thus, the defendants' argument that the plaintiff and proposed class members lack standing for failure to allege an injury is not well taken.

{¶ 12} The DTPA provides for injunctive relief, as well as "actual damages." R.C. 4165.03(A)(1) and (2). "[I]n order to award monetary relief, courts generally require 'something more,' such as evidence of actual losses suffered by the plaintiff or evidence of actual confusion of some customers." *Cesare v. Work* (1987), 36 Ohio App.3d 26, 28, 520 N.E.2d 586. There is no requirement under the statute that the "injury" be physical. At this point in the case, the plaintiff and proposed class members have alleged monetary damages. Whether the plaintiff and proposed class members actually suffered a loss as a result of the defendants' alleged misconduct is a question of fact that cannot be resolved on a motion for judgment on the pleadings. Therefore, because the plaintiff and proposed class members have alleged monetary loss as a result of the alleged misconduct of the defendants and this is a type of injury that is recoverable under the DTPA, the court finds that the defendants' argument that the plaintiff and proposed class members lack standing for failure to allege an injury is not well taken.

### COUNT 5: CONSUMER SALES PRACTICES ACT

{¶ 13} In this action, the plaintiff has asserted a class action under the CSPA. "[A] consumer may qualify for class action certification under Ohio's CSPA only if the defendant's alleged violation of the Act is substantially similar to an act or practice previously declared to be deceptive by one of the methods identified in R.C. 1345.09(B)." *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31, ¶ 2. The supplier must have acted with prior notice that the conduct was deceptive or unconscionable. Id. at ¶ 9. Pursuant to R.C. 1345.09(B), there are two ways in which the supplier may be put on notice: (1) by rule adopted by the Attorney General under R.C. 1345.05(B)(2); or (2) by a court decision from this state that has been made available for public

inspection by the attorney general under R.C. 1345.05(A)(3). See R.C. 1345.09(B); *Marrone*, at ¶ 9. "R.C. 1345.05(A)(3) provides that the attorney general must '[m]ake available for public inspection all rules * * * together with all judgments, including supporting opinions, by courts of this state * * * determining that specific acts or practices violate section 1345.02 or 1345.03 of the Revised Code.'" *Marrone* at ¶ 14. If the cases cited involve industries and conduct that are very different from the defendant's, the case does not provide "meaningful notice of specific acts or practices that violate the CSPA." Id. at ¶ 21.[1]

{¶ 14} The first decision available for public inspection that the plaintiff and proposed class members cite is *Pearn*, 148 Ohio App.3d 228, 2002-Ohio-3197, 772 N.E.2d 712. That case involved the purchase of a 1996 Chrysler Sebring Coupe. The car was sold in Michigan to an original purchaser, who also lived in Michigan. Once that individual began having problems with the brakes, she returned the car because it was a "lemon" under Michigan's lemon law. The car was sent to Detroit Auto Auction, and the bill of sale indicated that it was not to be sold to an Ohio dealer. Rolling Acres Dodge purchased the vehicle, and then transported it to Ohio, where it was sold to Ms. Pearn. She was told that she would be its first owner and was never told that it was a buyback vehicle. She began having problems with the brakes and decided to trade it in. That is when she discovered that it was a buyback vehicle. She filed an action against Rolling Acres and Chrysler, alleging violations of the CSPA, breach of warranty, and fraud.

{¶ 15} While *Pearn* involves the motor-vehicle industry and a defective braking system, which is similar to the subject matter of this case, the court finds that the conduct involved is not substantially similar to the conduct involved in this case. *Pearn* involves the duties of a supplier to notify the purchaser when a buyback vehicle is involved. Buyback vehicles are specifically governed by R.C. 1345.76. Here, the motorcycle/scooter is not a "buyback vehicle"; thus, there is no allegation that the supplier failed to notify the consumer of its status as such. Therefore, the court finds that the conduct involved in *Pearn* is not substantially similar to the conduct involved in the current case; consequently, *Pearn* cannot provide a basis for the plaintiff and proposed class members to maintain a CSPA class-action claim.

{¶ 16} The second decision available for public inspection cited by the plaintiff and proposed class members is *Lyons*, 43 Ohio Misc. 14, 72 O.O.2d 216, 332

---

1. The court would note that there is no allegation of notice through a rule adopted under R.C. 1345.05(B)(2); thus, the court will not address that particular method of notice. Instead, the plaintiff and proposed class members assert only that the supplier had prior notice that the conduct was deceptive or unconscionable by several court decisions made available for public inspection. For this reason, the court will address only that particular method of notice.

N.E.2d 380. In that case, the court was asked to make findings of fact and conclusions of law involving the obligations and duties arising from the sale of household appliances. *Brown* does not involve the motor-vehicle industry, nor does it specifically involve motorcycles/scooters. For this reason, the court finds that *Brown* does not involve an industry that is substantially similar to the current case; therefore, *Brown* cannot provide a basis for the plaintiff and proposed class members to maintain a CSPA class action claim.

{¶ 17} The third case cited by the plaintiff and proposed class members is *Layne*, Montgomery App. No. 16400, 1997 WL 705480. *Layne* involved a defendant-contractor who was hired to construct a detached garage at the plaintiff's residence. The contractor improperly installed the concrete pad and failed to correct the deficiencies in the installation despite promises to do so. The issues involved in this particular decision involving Layne and McGowen were damages and attorney fees. The court would first point out that the subject in *Layne* is different from the subject matter in this case. In *Layne*, the subject was the construction of a detached garage, while in this case, the subject matter is an allegedly defective motorcycle/scooter. Further, the conduct involved in the cases is distinguishable. The allegedly deceptive conduct in *Layne* was the failure to honor a promise to repair deficiencies in the concrete pad. The allegedly deceptive conduct in this case is apparent misrepresentations involving the braking system of a motorcycle and whether the braking system warrants the motorcycle to be classified as a scooter instead. There is no allegation in Count Five of the second amended complaint that the defendants promised to repair the alleged deficiencies in the braking system, but failed to do so. For these reasons, the court finds that *Layne* does not involve an industry or conduct that is substantially similar to the industry and conduct in the current case; therefore, it cannot serve as a basis for the plaintiff's and proposed class members' CSPA claim.

{¶ 18} The fourth and final case cited by the plaintiff and proposed class members is *Fribourg*, Clermont App. No. CA99–02–017, 1999 WL 552741. *Fribourg* involves the motor-vehicle industry, specifically the used-car industry. In that case, the plaintiffs, husband and wife, leased a used car from the defendant's business. The lease agreement involved a 1989 Chevrolet Beretta GT, but the vehicle leased was actually a standard Beretta. The defendant was aware that the vehicle was not the GT model, but misled the plaintiffs by leaving a GT emblem on the vehicle. The difference in value between the two vehicles was between $800 and $1,000. *Fribourg* determined that the defendant's conduct violated the CSPA. The court would first note that *Fribourg* did not involve a failure to distribute Lemon Law rights to the consumer; therefore, *Fribourg* cannot serve as a basis for a CSPA claim on the Lemon Law issue.

Further, *Fribourg* does not address the issue of vehicle recalls; therefore, the court finds that *Fribourg* cannot serve as a basis for a CSPA claim based on the recall issue.

{¶ 19} The defendants argue, and the court agrees, that Fribourg is not substantially similar to the current case because it did not involve the issue of a vehicle recall; however, the court finds that there are allegations other than the recall made in the second amended complaint. One such allegation is that the defendants falsely represented and marketed the CFMOTO CF250T–3 and CFMOTO CF250T–5 motorcycles, and that was unfair and deceptive to the plaintiff and proposed class members. Because this is the type of conduct specifically addressed in *Fribourg*, the court finds that the conduct in *Fribourg* and the conduct in this case are substantially similar. For this reason, the court finds that *Fribourg* can serve as a basis for the plaintiff's and proposed class members' CSPA claim. The court finds, however, that the plaintiff's and proposed class members' CSPA claim must be limited to the conduct specifically addressed in *Fribourg*, i.e., false representations and marketing. All other CSPA allegations in the second amended complaint are not substantially similar to the conduct in *Fribourg*; therefore, *Fribourg* cannot serve as a basis for those claims.

{¶ 20} Based upon the foregoing, the court finds that having construed all material allegations in the complaint as true and having drawn all reasonable inferences in favor of the nonmoving party, the plaintiff and proposed class members can prove a set of facts in support of their CSPA claim solely on the issue of false representations and marketing that would entitle them to relief. However, the plaintiff and proposed class members cannot prove a set of facts in support of their other CSPA allegations because they have not cited a case *available for public inspection* by the attorney general or a *rule promulgated* by the attorney general that is substantially similar to the other conduct alleged. For this reason, the court grants the defendants' motion for partial judgment on the pleadings as it relates to all CSPA allegations *except* those related to false representations and marketing.

### COUNT 6: DECEPTIVE TRADE PRACTICES ACT

{¶ 21} When adjudicating claims under the DTPA, Ohio courts apply the same analysis applicable under analogous federal law. *Corrova v. Tatman,* Muskingum App. No. CT2006–0053, 2007-Ohio-5295, 2007 WL 2874046, ¶ 25; *Dawson v. Blockbuster, Inc.,* Cuyahoga App. No. 86451, 2006-Ohio-1240, 2006 WL 1061769, ¶ 23; *Chandler & Assoc. v. America's Healthcare Alliance* (1997), 125 Ohio App.3d 572, 580, 709 N.E.2d 190. If claims are asserted under the Ohio common law and R.C. Chapter 4165, "courts are to apply essentially the same

analysis as that applied in assessing [the law of] unfair competition under the federal statutes." *Dawson* at ¶ 23, quoting *Cesare*, 36 Ohio App.3d 26, 520 N.E.2d 586, paragraph one of the syllabus. The Ohio DTPA is "substantially similar to the federal Lanham Act, and it generally regulates trademarks, unfair competition, and false advertising," Id., citing *Yocono's Restaurant, Inc. v. Yocono* (1994), 100 Ohio App.3d 11, 17, 651 N.E.2d 1347.

{¶ 22} "At least half of the circuits hold (and none of the others disagree) that § 45 of the Lanham Act, 15 U.S.C.S. § 1051 et seq., specifically 15 U.S.C.S. § 1127, *bars a consumer from suing under the act.* According to the United States Court of Appeals for the Second Circuit, § 45 identifies those engaged in commerce as the class of persons to be protected by the act. 15 U.S.C.S. § 1127. Congress' purpose in enacting § 43(a) of the act was to create a special and limited unfair competition remedy, virtually without regard for the interests of consumers generally, and almost certainly without any consideration of consumer rights of action in particular. *The act's purpose,* as defined in § 45, *is exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct.* Other circuits have followed the Second Circuit in *denying Lanham Act standing to consumers.*" (Emphasis added.) *Dawson,* 2006-Ohio-1240, 2006 WL 1061769, at ¶ 24, citing *Made in the USA Found. v. Phillips Foods, Inc.* (C.A.4, 2004), 365 F.3d 278.

{¶ 23} However, in a more recent case, the United States District Court, Southern District of Ohio, determined that a consumer can assert a cause of action based on a violation of the DTPA. See *Bower v. Internatl. Business Machines, Inc.* (S.D.Ohio 2007), 495 F.Supp.2d 837, 842–844. In its analysis, the court examines the specific language of R.C. 4165.01(D), 4165.02(B), and 4165.03(A)(2).

{¶ 24} In R.C. 4165.01(D), a person for purposes of the statute is defined as an "*individual,* corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, limited liability company, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity." (Emphasis added.) Further, R.C. 4165.02(B) provides that "a complainant *need not prove competition* between the parties * * *." Finally, R.C. 4165.03(A)(2) provides that "[a] *person* who is injured * * * may commence a civil action to recover actual damages from the person who commits the deceptive trade practice." As previously stated, a "person" includes an "individual." See R.C. 4165.01(D).

{¶ 25} After examining these particular provisions, *Bower* determined that the "statute otherwise remains silent on the issue of consumers, and no limits on the type of individuals who can pursue a claim are included in the

statute." *Bower*, 495 F.Supp.2d at 843. Further, "[t]he legislature will be presumed to have intended to make no limitations to a statute in which it has included by general language many subjects, persons or entities, without limitation * * *." Id. at 843, quoting *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 237, 36 O.O. 554, 78 N.E.2d 370. Because the members of the class were individuals, and the statute does not place any limitations on the individuals that may assert a cause of action, *Bower* determined that a consumer may maintain a cause of action based on an alleged violation of the DTPA. Id. at 844.

{¶ 26} The court notes that in *McKinney v. Bayer Corp.* (N.D.Ohio 2010), 744 F.Supp.2d 733, the United States District Court, Northern District of Ohio, addressed the conflict between *Bower* and *Dawson*. The judge in that case determined that it was necessary to certify this issue to the Ohio Supreme Court; however, prior to the issue's being certified, the plaintiff voluntarily dismissed his DTPA claim. For this reason, the conflict was never certified.

{¶ 27} This court adopts the *Dawson* holding that the Lanham Act does not provide for a cause of action for a consumer. Further, the court finds that there are substantial similarities between the DTPA and the Lanham Act. For instance, the DTPA expressly provides that "individuals" have standing to sue. While the Lanham Act does not provide for a cause of action by an "individual," it does provide for a cause of action for "any *person* who believes that he or she is or is likely to be damaged." See Section 1125(a)(1)(B), Title 15, U.S.Code. The Lanham Act defines "person" to include "a juristic person as well as a *natural person*." (Emphasis added.) Section 1127, Title 15, U.S.Code. Black's Law Dictionary provides that the first definition of "person" applies to a "natural person"; thus, a "natural person" is defined as a human being. See Black's Law Dictionary (9th Ed.2009). Therefore, like the DTPA, the Lanham Act expressly applies to individual human beings, as well as to corporations. However, despite the fact that the definition of "person" under the Lanham Act expressly includes "natural persons," or human beings, it is well established that a consumer does not have standing to sue under the act for false advertising. See *Foster v. Wintergreen Real Estate Co.* (C.A.4, 2010), 363 Fed.Appx. 269, 275; *Made in the USA Found.*, 365 F.3d at 281; *Dawson* at ¶ 24. This is true despite the fact that the Lanham Act does not limit the types of "natural persons," or human beings, to which it applies. In determining that consumers lack standing under the Lanham Act, the federal courts have held that the stated purpose of the act is to protect persons engaged in commerce, not individual consumers, against unfair competition. The courts have determined that this "evidences an intent to limit standing to a narrow class of potential plaintiffs possessing interests the protection of which furthers the purposes of the Lanham Act." *Conte Bros. Automotive, Inc. v. Quaker State–Slick 50, Inc.* (C.A.3, 1998), 165 F.3d 221, 229.

{¶ 28} The court further notes that if consumers had standing to sue under the DTPA, the CSPA would be rendered superfluous because both prohibit the same type of conduct. The fact that there is already a statute, i.e., the CSPA, that expressly provides a cause of action for a consumer based upon the deceptive trade practices of a company naturally leads to the conclusion that the DTPA, a statute similar to the CSPA, creates a similar cause of action for commercial entities for the deceptive trade practices of other commercial entities.

{¶ 29} For these reasons, the court adopts the holding of *Dawson* and finds that a consumer does not have standing to sue under the DTPA. Because this cause of action is not available to consumers under the act, the court finds that even having construed all material allegations in the complaint as true and having drawn all reasonable inferences in favor of the nonmoving party, it is beyond doubt that the plaintiff and proposed class members can prove no set of facts in support of this claim that would entitle them to relief. For this reason, the court grants the defendants' motion for partial judgment on the pleadings as it relates to the plaintiff's and proposed class members' DTPA class claim.

## CONCLUSION

{¶ 30} Based upon the foregoing, the court finds as follows:

{¶ 31} *CSPA*: Having construed all material allegations in the complaint as true and having drawn all reasonable inferences in favor of the nonmoving party, the plaintiff and proposed class members may be able to prove a set of facts in support of their CSPA claim solely on the issue of false representations and marketing that would entitle them to relief. However, the plaintiff and proposed class members cannot prove a set of facts in support of their other CSPA allegations because they have cited no case available for public inspection by the attorney general or rule promulgated by the attorney general that is substantially similar to the other conduct alleged. For this reason, the court grants the defendants' motion for partial judgment on the pleadings as it relates to all CSPA claims *except* those related to false representations and marketing.

{¶ 32} *DTPA*: Because this cause of action is not available to consumers under the act, the court finds that even having construed all material allegations in the complaint as true and having drawn all reasonable inferences in favor of the nonmoving party, it is beyond doubt that the plaintiff and proposed class members can prove no set of facts in support of this claim that would entitle them to relief. For this reason, the court grants the defendants' motion for partial judgment on the pleadings as it relates to the plaintiff's and proposed class members' DTPA class claim.

{¶ 33} *Other*: The court notes that pursuant to R.C. 1345.09(E), "[w]hen a consumer commences an individual action for a declaratory judgment or an injunction *or a class action* under this section, the clerk of court *shall* immediately mail a copy of the complaint to the attorney general. Upon timely application, the attorney general may be permitted to intervene in any private action or appeal pending under this section. When a judgment under this section becomes final, the clerk of court shall mail a copy of the judgment including supporting opinions to the attorney general for inclusion in the public file maintained under division (A)(3) of section 1345.05 of the Revised Code." (Emphasis added.) At the time of this decision, a copy of the complaint, amended complaint, and second amended complaint have not been served upon the attorney general. The court can find no case law indicating that such a failure is fatal to a litigant's case; therefore, the court finds that the plaintiff and proposed class members may proceed on their CSPA claim for false representations and marketing. The plaintiff and proposed class members are hereby ordered to file a praecipe for service to the clerk of courts requesting service upon the attorney general in compliance with R.C. 1345.09(E).

{¶ 34} This matter will hereby be set for a scheduling conference in order for the court to discuss with the attorneys the setting of a hearing on the plaintiff's motion for class certification on Count Five of the second amended complaint. A separate notice of that hearing will be mailed.

{¶ 35} It is ordered that this decision shall serve as the judgment entry in this matter.

So ordered.