**YOCONO'S RESTAURANT, INC., Appellee and Cross–Appellant,**

v.

**YOCONO, Appellant and Cross–Appellee.**

[Cite as *Yocono's Restaurant, Inc. v. Yocono* (1994), 100 Ohio App.3d 11.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16656.

Decided Dec. 30, 1994.

14

*Edward W. Oldham, Bruce H. Wilson* and *Stephen L. Grant,* for appellee.
*George A. Clark* and *Orlando J. Williams,* for appellant.

DICKINSON, Judge.

Defendant Nunzie Yocono has appealed from a judgment of the Summit County Court of Common Pleas that permanently enjoined him from using his surname, "Yocono," in connection with a restaurant in a certain geographic area. The trial court concluded that plaintiff Yocono's Restaurant, Inc. had established, by clear and convincing evidence, that its use of the name "Yocono" in connection with an Italian restaurant it operates had caused that name to acquire a secondary meaning. It further concluded that defendant's use of the same name in connection with his Italian restaurant was likely to cause confusion or

misunderstanding "as to the affiliation, connection, or association" between defendant's restaurant and plaintiff's restaurant. Defendant has argued (1) that the trial court incorrectly determined that the name "Yocono" had acquired a secondary meaning; (2) that the trial court's finding that defendant intentionally appropriated plaintiff's reputation was against the manifest weight of the evidence; and (3) that the trial court incorrectly awarded attorney fees to plaintiff. Plaintiff has cross-appealed and has argued (1) that the trial court made mathematical errors in its calculation of the amount of attorney fees plaintiff was entitled to recover; and (2) that the injunction entered by the trial court was inadequate, both because it covered too small a geographic area and because it was ambiguous. This court affirms the trial court's judgment in part and reverses it in part. Defendant's assignments of error are overruled and that part of the trial court's judgment related to them is affirmed because (1) plaintiff presented sufficient evidence that the name "Yocono" had acquired a secondary meaning; (2) its finding that defendant had intentionally appropriated plaintiff's reputation was not against the manifest weight of the evidence; and (3) the trial court did not err in awarding plaintiff attorney fees. Plaintiff's first assignment of error is overruled because the trial court did not abuse its discretion in setting the amount of attorney fees plaintiff was entitled to recover. Plaintiff's second assignment of error, however, is sustained in part because the injunction entered by the trial court was ambiguous, and this matter is remanded for the trial court to clarify its injunction.

# I

Defendant Nunzie Yocono and his brother James Yocono opened an Italian restaurant on West Exchange Street in the city of Akron during 1974. They jointly operated that restaurant under the name "Yocono's" for a number of years. In approximately 1980, the brothers incorporated their restaurant business under the name "Yocono's Restaurant, Inc.," with each of them owning half the outstanding shares. During 1982, James bought Nunzie's shares of Yocono's Restaurant, Inc. for $250,000, and Nunzie terminated his involvement with the West Exchange Street restaurant.

During 1987, defendant opened an Italian restaurant named "Marisa's Cafe Italia" on West Market Street in the Montrose area, five miles from Yocono's. During July 1992, while defendant was out of town, his son, who was the manager of Marisa's Cafe Italia, decided to change its name to "Nunzie Yocono's Italian Restaurant." The son testified that he decided to do so as a birthday surprise for his father.

As part of the name change, defendant's son had new signs placed on the restaurant building and along the street in front of it. On the new signs,

"Yocono's" was printed in much larger letters than the other parts of the restaurant's new name. "Yocono's" was also printed on a different color background than the color used as background for the other words that made up the new name. As a result, the most noticeable part of the new name was the word "Yocono's."

Defendant's son also prepared a new menu which was similar, both in appearance and content, to the menu that was in use at Yocono's. Among the sandwiches offered on the new menu was one identified as a "Yocono Burger." Yocono's has sold a sandwich identified as a "Yocono Burger" for many years. In addition, defendant's son reprogrammed the cash register so that "Yocono's" was printed at the top of each receipt.

Upon his return to Akron, defendant approved the various changes his son had made. He and his employees began answering the telephone by saying "Nunzie Yocono's," and he began advertising in the local newspaper under the name "Nunzie Yocono's." He also submitted ad copy for a telephone listing in the yellow pages under the name "Nunzie Yocono's Italian Restaurant."

Employees of the original Yocono's began receiving questions and complaints regarding defendant's restaurant shortly after the name change. As a result, plaintiff's attorney sent defendant a letter in which he stated that the new name was causing confusion among Yocono's customers, leading them to believe that Yocono's had opened a second location, and asked him to stop using "Yocono's" as part of his restaurant's name:

"[T]he intention of this letter is to request that you change the name of your restaurant back to Marisa's or to some other name which is not confusingly similar to 'Yocono's.' We would advise that we have carefully researched the law and that we feel strongly that our clients have dominant rights for the use of 'Yocono's' in this area, and that your use is clearly an infringement and causing irreparable harm to them in connection with these rights."

After a telephone conversation with plaintiff's attorney, defendant again changed the signs at his restaurant. The new signs identified it as "Nunzie's Italian Restaurant, owned by Nunzie Yocono." The first word, "Nunzie's," was emphasized in the same manner that "Yocono's" had been emphasized on the previous signs.

Plaintiff filed this action in the Summit County Court of Common Pleas on August 25, 1992. It averred that defendant's use of the name "Yocono's" was a deceptive trade practice in violation of R.C. 4165.02 and requested an injunction prohibiting him from continuing to do business under the name "Yocono's." Following a trial before a referee, the trial court granted plaintiff a permanent injunction prohibiting defendant from using the name "Yocono" for various

purposes associated with operating a restaurant. It also awarded plaintiff attorney fees of $8,221.50. Defendant timely appealed to this court and plaintiff cross-appealed.

## II

■ By its complaint in this action, plaintiff averred that defendant's use of the name "Yocono" was violative of R.C. Chapter 4165, Ohio's Deceptive Trade Practices Act. Generally, the Ohio Deceptive Trade Practices Act is a codification of the common law. *Worthington Foods, Inc. v. Kellogg Co.* (S.D.Ohio 1990), 732 F.Supp. 1417, 1431. Further, it is substantially similar to Section 43(a) of the Lanham Act, Section 1125(a), Title 15, U.S.Code. *Id.* Accordingly, cases interpreting the Lanham Act or the common law of trademarks are relevant to analysis of claimed violations of R.C. Chapter 4165.

## A

Defendant's first assignment of error is that the trial court incorrectly determined that the name "Yocono" had acquired a secondary meaning. He has asserted that plaintiff was required to establish all the elements necessary for the relief it sought by clear and convincing evidence and that it failed to present sufficient evidence regarding "secondary meaning" to do so.

The degree of proof a plaintiff must present in a deceptive trade practices case is not without some confusion. In *S. Ohio Bank v. S. Ohio Savings Assn.* (1976), 51 Ohio App.2d 67, 69, 5 O.O.3d 183, 184, 366 N.E.2d 296, 298, the First District Court of Appeals held that, when an injunction is the relief requested in such a case, clear and convincing evidence must be presented. If plaintiff presented sufficient evidence to prove its claim by clear and convincing evidence, it also carried the lesser burden of proving its claim by a preponderance. This court will, therefore, assume that the higher clear and convincing standard was applicable.

■ The first step in determining whether a defendant may be prohibited from using a word for which trademark protection is claimed is to determine which of four categories that word falls into: (1) generic or common descriptive; (2) merely descriptive; (3) suggestive; or (4) arbitrary or fanciful. *Miller Brewing Co. v. Heileman* (C.A.7, 1977), 561 F.2d 75, 79, certiorari denied (1978), 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772. A generic or common descriptive term is not entitled to trademark protection under any circumstances. *Id.* Suggestive terms and arbitrary or fanciful terms are entitled to trademark protection without the need to show that they have a secondary meaning. *Id.* Words that are merely descriptive are entitled to trademark protection only if it

is shown that they have acquired a secondary meaning. *Id.* Personal names, like "Yocono" in this case, fall within the merely descriptive category and, therefore, are entitled to trademark protection only if they have acquired a secondary meaning. See 1 McCarthy on Trademarks and Unfair Competition (3 Ed.1994), Section 13.02[2]. Accordingly, the issue before this court in regard to defendant's first assignment of error is whether plaintiff proved by clear and convincing evidence that the name "Yocono" has acquired a secondary meaning.

In order to establish secondary meaning, plaintiff was required to prove that "the primary significance of the term in the minds of the consuming public is not the product but the producer." *Pizzazz Pizza & Restaurant v. Taco Bell Corp.* (N.D.Ohio 1986), 642 F.Supp. 88, 92. In order for a personal name to have a secondary meaning, "the public has [to have] come to recognize the personal name as a symbol that identifies and distinguishes the goods or services of only one seller." 1 McCarthy on Trademarks and Unfair Competition (3 Ed.1994) 13–5, Section 13.02[1].

In *Pizzazz Pizza & Restaurant v. Taco Bell Corp.* (N.D.Ohio 1986), 642 F.Supp. 88, the Federal District Court for the Northern District of Ohio recognized five factors relevant to a determination of secondary meaning: "(1) the amount and manner of advertising; (2) the volume of sales; (3) length and manner of use; (4) direct consumer testimony and; (5) consumer surveys." *Id.* at 92. There was evidence before the trial court that related to each of the first four above factors.

Jamie Yocono, one of the managers of Yocono's, identified a number of advertisements that Yocono's had placed. In addition, she testified that it was a practice of the restaurant to contribute food to various organizations as a form of advertising. She identified records of a number of such donations, stating:

"My parents [James Yocono and his wife] don't believe so much in paying money to advertise as they do in letting the food speak for itself. So instead of giving a $25.00 donation to a group they'll give $25.00 worth of food to a group and let the food advertise itself."

Jamie Yocono also presented evidence regarding the volume of sales at Yocono's. Although that evidence was limited to 1992, it was sufficient to show that a large number of people have been exposed to the name "Yocono's" in connection with the restaurant on West Market Street because they had dined there. During the three-month period of July, August, and September 1992, for example, over 48,000 people dined at Yocono's.

The name "Yocono's" has been used in connection with the restaurant on West Exchange Street since it opened during 1974. Exclusive use for such a long time means that many people were exposed to it in that context, causing them to

associate it with that particular restaurant. One commentator has described how a restaurant's name acquires secondary meaning:

"In the early stages of a business and prior to obtaining secondary meaning, there can be no likelihood of customer confusion, for by definition, the personal name signifies only the personal reputation of that person, not a business reputation in the nature of a trademark or service mark. * * * Seeing a sign announcing 'Al's Drive In,' the buyer knows only that someone named Al, out of all the Als in the world, is in business. If someone says 'Let's go to Al's,' the reaction may be 'Al who? Where?' But once Al's has become known to many people as designating a single source, then people will know exactly what is meant when someone says 'Lets go to Al's.'" 1 McCarthy on Trademarks and Unfair Competition (3 Ed.1994) 13–7, Section 13.02[3].

Eighteen years of use of the name "Yocono's" in connection with the restaurant on West Exchange Street provided an opportunity to many people to come to recognize the word "Yocono's" as signifying that restaurant rather than just being a family name.

Plaintiff presented no evidence of customer surveys and the testimony of only one customer. That customer was not totally disinterested because he acknowledged that he sells insurance to James Yocono and his wife. He testified, however, that he had never met them because he conducted business with them only over the telephone. When he saw the signs at defendant's restaurant identifying it as "Nunzie Yocono's Italian Restaurant," he "just assumed that it was just an expansion." He learned differently when, while speaking to James Yocono's wife over the telephone about insurance, he congratulated her on the new restaurant. His testimony demonstrated that, at least for him, the name "Yocono" had acquired a secondary meaning identifying the West Exchange Street restaurant. Upon seeing the new signs outside defendant's restaurant, his reaction was not that someone named Yocono had opened a restaurant; his reaction was that the restaurant on West Exchange Street had expanded to a new location.

The evidence plaintiff presented was sufficient to establish, by clear and convincing proof, that the name "Yocono's" had acquired a secondary meaning. Accordingly, defendant's first assignment of error is overruled.

### B

Defendant's second assignment of error is that the trial court's finding that he intentionally appropriated plaintiff's reputation was against the manifest weight of the evidence. In effect, he has argued that the trial court should have

accepted his son's testimony that he changed the name of the restaurant only as a birthday surprise and not as an attempt to appropriate Yocono's goodwill.

" '[A] reviewing court can reverse a judgment upon an assignment of error involving the weight of the evidence only when the verdict is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice * * *.' " *Royer v. C.R. Coblentz Local School Dist. Bd. of Edn.* (1977), 51 Ohio App.2d 17, 20, 5 O.O.3d 138, 140, 365 N.E.2d 889, 892, quoting *Jacobs v. Benedict* (1973), 39 Ohio App.2d 141, 144, 68 O.O.2d 343, 345, 316 N.E.2d 898, 901. The trial court's finding that defendant changed the name of his restaurant in an attempt to appropriate plaintiff's goodwill was not a violation of substantial justice.

Defendant previously sold his stock in plaintiff, thereby giving up his right to participate in the goodwill that had been built in the name "Yocono." He operated his own restaurant under a different name for five years before the name was changed, allegedly for the sole purpose of providing him a birthday surprise. Not only was the name changed, the signs that were posted displaying the new name appeared calculated to emphasize the word "Yocono's," and the menus were changed, both in appearance and in content, to be more like those in use at plaintiff's restaurant. When plaintiff, through its lawyer, contacted defendant and expressed its concern regarding confusion it said was being caused by defendant's restaurant's new name, defendant changed his signs to remove some of the emphasis that had been placed on the word "Yocono," but he did not abandon his use of that word. The trial court's conclusion that the change of defendant's restaurant's name was more than just a birthday surprise was not against the manifest weight of the evidence. Defendant's second assignment of error is overruled.

## C

Defendant's third assignment of error is that the trial court incorrectly awarded plaintiff attorney fees. Specifically, he has argued that plaintiff failed to "provide an expert to support its position," and there was no evidence supportive of the trial court's conclusion that defendant had acted in bad faith.

R.C. 4165.03 specifically provides that an award of attorney fees may be assessed against a defendant for violation of the Deceptive Trade Practices Act "if the court finds that the defendant has willfully engaged in the trade practice knowing it to be deceptive." As discussed above in regard to defendant's second assignment of error, the trial court's conclusion that defendant intentionally appropriated plaintiff's reputation was not against the manifest weight of the evidence. Accordingly, there was sufficient evidence before the trial court that

defendant willfully engaged in the trade practice at issue "knowing it to be deceptive."

■ Further, plaintiff presented sufficient evidence to establish the amount of fees awarded by the trial court, $8,221.50. In determining the amount a party is entitled to recover as allowable fees, a court must assess "(1) the time and labor involved in maintaining [the] litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary legal services, (4) the experience, reputation, and ability of the attorneys, and (5) the miscellaneous expenses of [the] litigation." *State ex rel. Montrie Nursing Home, Inc. v. Creasy* (1983), 5 Ohio St.3d 124, 128, 5 OBR 258, 262, 449 N.E.2d 763, 767.

Defendant produced an attorney who provided his opinion of what he considered a reasonable hourly rate in a deceptive trade practices case in view of the complexity of the issues and the degree of skill necessary to deal with those issues. He testified regarding the reputation of the law firm that represented plaintiff and about the fact that cases in which preliminary injunctive relief is sought, as it was in this case, may involve some degree of urgency.

Although, as discussed below in connection with plaintiff's first assignment of error, the records plaintiff presented in support of its claim for attorney fees were poorly kept, they were sufficient, when coupled with the trial court's opportunity to observe plaintiff's attorneys during trial, to support the amount awarded, roughly one-third the amount plaintiff had sought. There was sufficient evidence before the trial court for it to assess the amount of attorney fees to which plaintiff was entitled. Defendant's third assignment of error is overruled.

## D

Plaintiff's first assignment of error is that the trial court incorrectly calculated the amount of attorney fees it was entitled to recover from defendant. As noted previously, the trial court awarded plaintiff attorney fees of $8,221.50. It had sought fees, however, totalling $24,490.10, the amount one of its employees testified it actually paid the law firm that had represented it.

The trial court awarded plaintiff less than it sought because (1) it calculated the amount to which plaintiff was entitled based upon an hourly rate of $125 rather than the $175 plaintiff's attorneys actually charged; (2) there were a number of errors in the bills paid by plaintiff; and (3) it determined that plaintiff was not entitled to recover attorney fees for time spent by its attorneys in pursuing part of the relief it had sought. Plaintiff has argued that the reduction was the result of "mathematical errors."

Plaintiff's own expert testified that a standard fee for the type of services provided by plaintiff's attorneys would have been within a range between $125 and $150 per hour as opposed to the $175 per hour actually charged by plaintiff's attorneys. The trial court had an opportunity to observe the quality of representation provided by plaintiff's attorneys and, among other things, to assess their efficiency. It did not abuse its discretion by determining that plaintiff should be entitled to recover fees based on an hourly rate of $125 rather than the higher amount its attorneys actually charged.

Plaintiff supported its claim for attorney fees with typed invoices from the law firm that represented it. Those invoices included neither an hourly rate nor the number of hours spent providing the billed services. Rather, they provided only a brief synopsis of claimed services provided, a date upon which those claimed services were allegedly provided, and a total monetary amount claimed as due. Plaintiff failed to provide any back-up materials for the invoices that would have assisted the trial court in evaluating them. Rather, plaintiff's attorneys annotated the invoices in pencil in an attempt to indicate the number of hours spent providing the services listed on each. When the written hourly amounts were multiplied by the $175 hourly rate the attorneys said they charged plaintiff, however, the resulting amounts did not match the totals billed on the invoices. In some instances, it appeared that plaintiff was overbilled, and, in some instances, it appeared that plaintiff was underbilled. The trial court concluded that plaintiff was overbilled for a total of 12.2 hours and underbilled for a total of 10.1 hours. The trial court added those two amounts together and found that the resulting 22.3 hours represented nineteen percent of the total number of hours for which plaintiff sought recovery, a number it set at 116 hours. The source of the number 116 is unclear from the record before this court. Based upon its calculation, the trial court reduced the amount to which plaintiff would have otherwise been entitled by nineteen percent.

The trial court's reduction based upon the overbilling and underbilling was not a model of mathematical clarity. If 116 hours represented the hours actually paid for by plaintiff, they would not have included the 10.1 hours for which it was underbilled and, mathematically, those hours should not have been deducted. As noted above, however, the source of the number 116 is unclear from the record before this court. Accordingly, this court cannot determine whether the trial court's reduction was in fact tainted by a mathematical error.

The trial court noted that plaintiff's attorneys' records regarding the fees they charged plaintiff were deficient:

"A significant amount of the Plaintiff's own hours, some 19%, of the 116 hours is vague and unclear and represents inaccura[cies] or inconsistencies in the bookkeeping records maintained by Plaintiff's counsel. It is concluded that while

Plaintiff's counsel in [their] bookkeeping efforts did not undertake such inconsistencies with any design towards cheating, the fact remains that the bookkeeping records are at best grossly [imprecise], inconsistent, and otherwise poorly done and again would require the trier of fact to engage in gross speculation and conjecture about what was really intended by the disparity between the amount the client actually paid when the invoice was made and the subsequent hours calculated by Plaintiff's counsel when [they] sought to recompile the hours."

The burden was upon plaintiff to prove the amount of attorney fees to which it was entitled. Although the trial court's method of reducing the amount it awarded based upon the deficiencies in plaintiff's attorneys' billing records may not have been a model of mathematical clarity, any errors involved therein appear to have been a result of plaintiff's attorneys' billing deficiencies. This court cannot conclude that the trial court abused its discretion in reducing the amount of fees to which plaintiff was entitled by nineteen percent based upon those deficiencies.

██ Finally, the trial court reduced the amount of attorney fees to which it found plaintiff entitled because it determined that plaintiff had sought relief in addition to that to which it was entitled pursuant to R.C. Chapter 4165. Specifically, defendant had registered the name "Nunzie Yocono's Italian Restaurant" as a trade name with the Ohio Secretary of State and plaintiff sought an order from the trial court to have that registration cancelled. The trial court determined that the attempt to cancel the trademark registration constituted thirty percent of the litigation. As a result, it reduced the amount of attorney fees to which it found plaintiff would have otherwise been entitled by thirty percent. This court cannot conclude that the trial court abused its discretion in so reducing its award of attorney fees to plaintiff.

The trial court did not abuse its discretion in setting the amount of attorney fees it awarded plaintiff. Accordingly, plaintiff's first assignment of error is overruled.

### E

██ Plaintiff's second assignment of error is that the injunction entered by the trial court was inadequate, both because it covered too small a geographic area and because it was ambiguous. The injunction entered by the trial court was as follows:

"Plaintiff should have a permanent injunction awarded under 4165.03 baring Nunzie Yocono or any person or entity control[ing] or operating his business from using the name Yocono in any fashion, any advertisement, trade dress, signage and/or menus or business cards or other similar items associated with the

Defendant's operation of his restaurant in Montrose or anywhere else within a 15–mile radius of the junction of State Route 18 (West Market Street) and the Akron City/Fairlawn border.  * * * "

A trial court's framing of an injunction will be reviewed only for an abuse of discretion.  *Ramsey v. Edgepark, Inc.* (1990), 66 Ohio App.3d 99, 583 N.E.2d 443.  A trial court has not abused its discretion unless its ruling is "unreasonable, arbitrary, or unconscionable."  *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.  Plaintiff has argued that, rather than the area covered by the injunction being limited to a fifteen-mile radius of the junction of State Route 18 and the Akron/Fairlawn border, it should have extended to all of Summit County and "the surrounding counties."  Plaintiff, however, did not present clear and convincing evidence that the secondary meaning of the word "Yocono" extended to surrounding counties or, for that matter, throughout Summit County.  Accordingly, this court cannot conclude that the trial court abused its discretion by limiting the geographic coverage of the injunction it entered to a fifteen-mile radius of the junction of State Route 18 and the Akron/Fairlawn border.

Plaintiff has also argued that the trial court's injunction was inadequate because it was ambiguous.  Civ.R. 65(D) provides that an order granting an injunction must be specific:

"Every order granting an injunction * * * shall set forth the reasons for its issuance;  shall be specific in terms;  shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained * * *."

An injunction should be written in order that "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed."  *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 60, 556 N.E.2d 157, 162.

Plaintiff has argued that the trial court's injunction was defective because "the exact geographical scope of the proposed injunction requires reference to a map, whereupon the defined circle may be drawn."  Civ.R. 65(D)'s prohibition of reference to other documents, however, relates only to the description of the acts prohibited, not to the geographic area in which those acts are prohibited.  Any injunction of limited geographic scope must rely upon imaginary lines.  In order to determine where those imaginary lines fall, it will always be necessary to consult a map.  This is no more true for an injunction covering a circle with a fifteen-mile radius from a specific point than it would be for one covering Summit and the surrounding counties.  Both would utilize imaginary lines.  The only difference is that the trial court used an imaginary line that it established;

plaintiff's suggested injunction would use imaginary lines established at the time the counties at issue came into existence. In either instance, it would be necessary to consult a map to determine the exact areas covered by the injunction. The trial court's injunction is not inadequate because of its geographic scope.

Plaintiff has also argued that the trial court's injunction is ambiguous because it is unclear whether defendant is prohibited from using the word "Yocono" only in connection with a restaurant that is itself located within the geographic area of the injunction, or whether he is prohibited from using the word "Yocono" within the geographic area of the injunction in connection with a restaurant regardless of where that restaurant is located. This court agrees that the trial court's injunction is unclear. Accordingly, plaintiff's second assignment of error is sustained in part, and this matter will be remanded to the Summit County Court of Common Pleas for the limited purpose of permitting it to redraft its injunction to make it clear whether defendant is prohibited from using the word "Yocono" within the area covered by the injunction to promote a restaurant located outside that area.

### III

Defendant's assignments of error are overruled. Plaintiff's first assignment of error is overruled and its second assignment of error is sustained in part. This matter is remanded to the Summit County Court of Common Pleas for the limited purpose of permitting it to redraft its injunction to make it clear whether defendant is prohibited from using the word "Yocono" within the area covered by the injunction to promote a restaurant located outside that area.

*Judgment accordingly.*

COOK, J., concurs.

BAIRD, J., dissents.

BAIRD, Judge, dissenting.

Since I believe that the injunction clearly applies, and is limited to, the use anywhere of the name in connection with the present restaurant, or one within the delineated territory, I do not believe that the judgment needs any clarification. Accordingly, while I concur in the balance of the opinion, I dissent from the remand for clarification.