OPINION
{¶ 1} Appellants, Triggs Technologies, Inc., f.k.a. Triggs 
Associates, Inc., et al., appeal the judgment entered by the Lake County Court of Common Pleas. The trial court entered summary judgment in favor of appellee, EDP Consultants Inc., a.k.a. EDP/Triggs Consultants.
 {¶ 2} Fred Triggs has worked in the geotechnical engineering field for decades. Prior to 1973, Fred Triggs owned his own company. In 1973, he moved the company to Willoughby Hills and established it as "Triggs Associates." In 1985, Fred Triggs started a second company, "Tecnostat USA, Inc." Triggs and Associates was a consulting firm, while Tecnostat USA, Inc. sold testing equipment.
 {¶ 3} In 1987, Fred Triggs was contemplating retirement. He decided to sell Triggs Associates to three former employees, Alan Esser, John Dingeldein, and Joseph Petraus, who continued operations under the name "EDP/Triggs Consultants."
 {¶ 4} One of the terms of the sale was that Fred Triggs would continue to work for EDP/Triggs Consultants on a part-time basis as a consultant for six years. Following the six-year consultant period, the agreement also stated that there was a two-year non-competition period, where Fred Triggs was not permitted to work in the engineering field within one hundred fifty miles of Willoughby.
 {¶ 5} In 1991, Tecnostat USA changed its name to "Triggs Technologies." As a result of this change, EDP/Triggs Consultants began to phase out the "Triggs" name on items such as letterhead and business cards. The new name was simply EDP Consultants. However, the company continued to use the "Triggs" name on the building sign and on some of their vehicles.
 {¶ 6} In 1995, Fred Triggs contracted with BBC M Company. As a result, BBC M Company started a separate division, know as BBC M/Triggs Engineering.
 {¶ 7} Appellee then filed the instant lawsuit alleging that appellants' use of the Triggs name was a violation of the Ohio Consumer Protection Act and a breach of the sales contract.
 {¶ 8} Appellants brought Owners Insurance Company into the lawsuit on an indemnification theory. The trial court granted Owners Insurance Company's motion for summary judgment.
 {¶ 9} In an April 13, 2001 judgment entry, the trial court addressed the following pleadings:
 {¶ 10} "Plaintiff's Amended Motion for Summary Judgment as to the Acquisition of Trade Name Rights and Goodwill; Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment as to the Acquisition of Trade Names and Goodwill; Plaintiff's Reply Brief in Support of Motion for Partial Summary Judgment as to Acquisition of Trade Name Rights and Goodwill; Plaintiff's Amended Motion for Summary Judgment as to Abandonment Issue; Brief in Opposition to Plaintiff's Motion for Summary Judgment as to Abandonment Issue; Plaintiff's Reply Brief in Support of Its Motion for Summary Judgment as to Abandonment Issue; Plaintiff's Motion for Partial Summary Judgment as to Prohibitions against the Defendants; Defendant's (sic) Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment as to Prohibitions against Defendants; Plaintiff's Reply Brief in Support of Motion for Partial Summary Judgment as to Prohibitions against Defendants; Response of Defendant's (sic) to Plaintiff's Motions for Summary Judgment; Motion of Defendants, Triggs Technologies, Inc. and J. Fred Triggs, Jr. for Summary Judgment; and Plaintiff's Brief In Opposition to Defendants' Motion for Summary Judgment."
 {¶ 11} The trial court entered judgment in favor of appellee on the abandonment issue, finding that appellee did not abandon the Triggs name. The court also entered judgment in favor of appellee on the trade name and good will issue, finding that Triggs was a trade name and that it was conveyed to appellee by the purchase agreement. Finally, the court enjoined appellants from using the Triggs name in the field of engineering.
 {¶ 12} Appellants raise four assignments of error. Appellants' first assignment of error is:
 {¶ 13} "The trial court erred in granting summary judgment against defendants-appellants as to the abandonment claim as clear and convincing evidence existed to demonstrate abandonment by the plaintiff-appellee."
 {¶ 14} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1] The standard of review for the granting of a motion for summary judgment is de novo.[2]
 {¶ 15} In a summary judgment exercise, the burden is on the moving party to point to portions of the record that show there are no genuine issues of material fact. If the moving party does not meet this burden, then summary judgment should not be entered.[3]
 {¶ 16} Appellants claim that Appellee has abandoned the trade name of Triggs. In order to succeed on a claim for abandonment, the defendant must show, by clear and convincing evidence "not only acts indicating practical abandonment, but actual intent to abandon."[4]
 {¶ 17} The depositions of Alan Esser and John Dingeldein point to various acts of appellee. These acts tend to show practical abandonment of the Triggs name. Both of these individuals stated in their depositions that the Triggs name was dropped from appellee's business cards and letterhead and that the Triggs name was no longer used in the company's listing in the phone book.
 {¶ 18} Mr. Dingeldein's deposition further indicates that any new brochures created after 1991, do not carry the Triggs name, however, the company still used one brochure with the Triggs name that was created before 1991. Likewise, Mr. Esser stated that any new vehicles purchased after 1991, do not have the Triggs name on them, while vehicles used by the company prior to 1991, still have the Triggs name on them. He estimated that about fourteen of the sixteen vehicles owned by the company do not bear the Triggs name. Finally, Mr. Dingeldein stated that he believed that appellees sent promotional materials to some of its clients in 1991, informing them that appellee changed its name.
 {¶ 19} The above references indicate that there remains a genuine issue of material fact as to whether appellee engaged in acts indicating practical abandonment. This issue needs to be resolved by a trier-of-fact.
 {¶ 20} The second requirement for abandonment is that there be an intent to abandon. Mr. Petraus, Mr. Esser, and Mr. Dingeldein all stated in their depositions that there was a decision to drop the Triggs name.
 {¶ 21} We note that there was evidence before the court, for example the certain brochures and vehicles, that still bore the Triggs name. This indicates that there was a genuine issue of material fact regarding the intention of appellee to abandon the name Triggs.
 {¶ 22} In its judgment entry, the trial court stated that appellants "have not offered any evidence to show Plaintiff's complete discontinued use of the name." We disagree with the trial court's conclusion that complete discontinued use of the name is required to establish abandonment. Non-use of the name "may be evidence from which intent to abandon may be inferred, depending on the length of such non-use, the cause of it and other relevant factors."[5]
 {¶ 23} Moreover, the depositional testimony of Mr. Esser and Mr. Dingeldein indicates that appellee did completely discontinue the use of the Triggs name in 1991, on all new interactions, however, the Triggs name was allowed to remain on certain items that were in existence prior to 1991.
 {¶ 24} Appellee cites Cincinnati Reality Co. v. St. NicholasPlaza, Inc., where the court held that the non-use of a trade name for twenty years did not constitute abandonment.[6] The court held that "abandonment, or not, is a question of intention."[7] However, the rationale of the court's decision was that the hotel never intended to abandon the trade name. Similarly, the degree of non-use of the Triggs name by appellee is relevant in determining whether appellee intended to abandon the Triggs name.
 {¶ 25} In Cesare v. Work, the trial court found that a small length of non-use did not amount to abandonment. The primary distinction we make between Cesare v. Work and the case sub judice, is that Cesare was a bench trial and, thus, the trial court served as trier-of-fact.[8]
Here, the trial court was ruling on a motion for summary judgment and was not to be engaged in the weighing of evidence but, rather, was required to construe the evidence in favor of appellants as the non-moving party.[9]
 {¶ 26} We note that "because abandonment results in a forfeiture of rights, courts are reluctant to find abandonment."[10] We offer no opinion as to whether appellee actually abandoned the Triggs name. However, the issue of abandonment involved a weighing of evidence. After reviewing the evidence, we cannot say that reasonable minds can come to only one conclusion regarding the issue of abandonment, as required by Civ.R. 56(C). There are genuine issues of material fact that need to be resolved.
 {¶ 27} Appellants' first assignment of error has merit.
 {¶ 28} Appellants' second assignment of error is:
 {¶ 29} "The trial court erred in ruling that `Triggs' was a trade name and included in the sale of assets to the plaintiff-appellee."
 {¶ 30} The first issue in this assignment of error is whether a surname constitutes a trade name.
 {¶ 31} Courts have held that "a natural person, in the absence of a self-imposed restraint, has the right to the honest use of his family name in conducting any business, even though such use may be detrimental to other individuals of the same surname or to corporations the titles of which are formed in whole or in an integral part by the surname."[11]
 {¶ 32} However, personal names are entitled to protection if they have acquired a secondary meaning.[12] The following commentary describes a situation when a name acquires a secondary meaning:
 {¶ 33} "`In the early stages of a business and prior to obtaining secondary meaning, there can be no likelihood of customer confusion, for by definition, the personal name signifies only the personal reputation of that person, not a business reputation in the nature of a trademark or service mark. * * * Seeing a sign announcing "Al's Drive In," the buyer knows only that someone named Al, out of all the Als in the world, is in business. If someone says "Let's go to Al's," the reaction may be "Al who? Where?" But once Al's has become known to many people as designating a single source, then people will know exactly what is meant when someone says "Lets (sic) go to Al's."'"[13]
 {¶ 34} In Yocono, two brothers operated a restaurant in the Akron area known as Yocono's, later incorporated as "Yocono's Restaurant, Inc." One of the brothers sold his share of the restaurant to his brother and opened another restaurant about five miles away. Later, he changed the name of his restaurant to "Nunzie Yocono's Italian Restaurant."[14] One individual testified that he mistook the second restaurant as being affiliated with the original restaurant. The Ninth Appellate District held that this evidence, combined with the length of operation of the original restaurant, was sufficient to establish that Yocono had obtained a secondary meaning.[15]
 {¶ 35} It is apparent that the name Triggs has acquired a secondary meaning. Stephen Pasternack, part owner of BBC M, stated in his deposition that the reason BBC M actually put the name Triggs in the name of the Northeast Ohio Division was because of Fred Triggs' reputation in the profession. The depositional evidence established that the Triggs name has been used in the engineering field for over twenty years. Attached to appellee's motion for summary judgment on this issue was exhibit A, an affidavit from Mr. Dingeldein, which refers to a document signed by Fred Triggs that states that Triggs 
Associates was a renowned firm. Mr. Dingeldein states that he agrees with the assessment that the firm is renowned.
 {¶ 36} Mr. Esser's deposition indicates that appellee's firm primarily focuses on the architecture, engineering, and contractor circles rather that the general public. This indicates that there are relatively few potential clients, as compared to a company that targets the general public.
 {¶ 37} This cumulative evidence establishes that the Triggs name has obtained a secondary meaning, at least within the targeted clientele.
 {¶ 38} Appellants cite Burns v. Navorska, which states that it will be presumed that an individual did not intend to convey the use of his name away unless there is express language to that effect.[16] In addition, appellants cite Lewis v. Lewis, wherein the Seventh Appellate District held that the seller did not convey the family name when he sold the majority of his shares in the business to his ex-wife.[17]
However, unlike the court in Yocono, the Lewis Court noted that the record did not establish the name as being synonymous with the industry in the area.[18]
 {¶ 39} Appellants are correct in their assertion that an individual generally has the right to use his family name while conducting business.[19] However, this is not true if there is a showing that the name has obtained "a secondary meaning associated with [the] business so that an attempt by another to use such name results in confusion to the ordinary, average customer."[20]
 {¶ 40} The second issue is whether Fred Triggs gave up the trade name to appellants at the time of the purchase of the business, which would result in appellee having exclusive use of the trade name.
 {¶ 41} Appellee attached a copy of the asset purchase agreement to its amended motion for summary judgment as to acquisition of trade name rights and goodwill. This document was signed by Fred Triggs. It states, in part, that: "[s]uch assets include, but are not necessarily limited to, the following: all cash and bank deposits (exclusive of payroll taxes withheld); inventory; contract rights; product designs; models; know-how; patents; patent applications; drawings; prints; trade names; logos; operating data and records; customer lists * * *." (Emphasis added).
 {¶ 42} This agreement expressly states that the trade name was conveyed to appellee.
 {¶ 43} The evidence submitted with the motions for summary judgment and the depositions in the record reveal that there are no genuine issues of material fact to be decided on the trade name issue. The trade name was conveyed to appellee in the contract. All the evidence supports the proposition that the Triggs name has obtained a secondary meaning. Therefore, the trial court did not err by granting appellee's motion for summary judgment on the issue of trade name and good will.
 {¶ 44} Appellants' second assignment of error is without merit.
 {¶ 45} Appellants' third assignment of error is:
 {¶ 46} "The trial court erred in permanently prohibiting Defendants-appellants from using the name `Triggs' in the practice of engineering or referring to themselves as the successor or founders of the former Triggs Associates firm in the marketing materials as plaintiff-appellee failed to meet the burden of proof necessary for an injunction."
 {¶ 47} Having found merit to appellant's first assignment of error, this assignment of error is moot.
 {¶ 48} Appellants' final assignment of error is:
 {¶ 49} "The trial court erred in granting plaintiff-appellee Owners Insurance Company's motion for summary judgment on the intervening complaint for declaratory judgment."
 {¶ 50} The trial court granted Owners Insurance Company's motion for summary judgment on January 11, 2001. Included in the judgment entry was language pursuant to Civ.R. 54(B), stating that there was no just reason for delay. On April 18, 2001, appellants timely filed their notice of appeal to the trial court's April 13, 2001 judgment entry. Then, on May 11, 2001, appellants filed an amended notice of appeal, which included the January 11, 2001 judgment entry. This court dismissed the appeal as it related to Owners Insurance Company in a judgment entry dated October 25, 2001, because the appeal was untimely. Pursuant to App.R. 4(B)(5), a judgment entered under Civ.R. 54(B) must be appealed within thirty days in accordance with App.R. 4(A).
 {¶ 51} Based on this court's judgment entry dated October 25, 2001, we will not address the merits of this assignment of error.
 {¶ 52} The judgment of the trial court is affirmed in part and reversed in part. This matter is remanded for further proceedings consistent with this opinion.
JUDITH A. CHRISTLEY and ROBERT A. NADER, JJ., concur.
[1] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[2] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
[3] Dresher v. Burt, 75 Ohio St.3d at 293.
[4] Cesare v. Work (1987), 36 Ohio App.3d 26, 33, citing Saxlehner v.Eisner Mendelson Co. (1900), 179 U.S. 19, 31.
[5] Cesare v. Work, 36 Ohio App.3d at 32, citing Baglin v. CusenierCo. (1911), 221 U.S. 580.
[6] Cincinnati Reality Co. v. St. Nicholas Plaza, Inc. (Feb. 3, 1931), 1931 Ohio Misc. LEXIS 1571.
[7] Id. at *18.
[8] Cesare v. Work, 36 Ohio App.3d at 34.
[9] Civ.R. 56(C).
[10] Cesare v. Work, 36 Ohio App.3d at 33.
[11] Chinn v. Chinn (1986), 33 Ohio App.3d 19.
[12] Yocono's Restaurant, Inc. v. Yocono (1994), 100 Ohio App.3d 11,18.
[13] Id. at 19, quoting McCarthy on Trademarks and Unfair Competition (3 Ed. 1994) 13-7, Section 13.02[3].
[14] Id. at 15.
[15] Id. at 19.
[16] Burns v. Navorska (1932), 42 Ohio App. 313, 315.
[17] Lewis v. Lewis (Nov. 21, 1995), 7th Dist. No. 93 C.A. 154, 1995 Ohio App. LEXIS 5222.
[18] Id. at *6.
[19] See Chinn v. Chinn, supra, at 19.
[20] Id., citing Stern Furniture Co. v. Stern (1948),152 Ohio St. 191.