OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendants-Appellants, R. Fresh, L.L.C., and Joseph Rulli, appeal the decision of the Mahoning County Court of Common Pleas that entered judgment for the Plaintiffs-Appellees, F.A.R. Food, Inc., and Frank Rulli, and enjoined Appellants "from any and all further use of the name Rulli in connection with the operation of a grocery store, grocery business or in any such way that would result in confusion and interference with Plaintiff's right to the mark." Appellants raises seven issues on appeal, each of which challenge an aspect of the trial court's conclusion that Appellees had an enforceable trademark in the name "Rulli" in connection with the grocery business in the Youngstown area. However, each of Appellants' arguments is meritless and the trial court's decision is affirmed.
 Facts {¶ 2} Around 1922, three brothers, Nicola, Guiseppe, and Francesco Rulli, founded, "Rulli Brothers Market," a grocery store specializing in Italian products, in Youngstown, Ohio. Francesco died in 1946 without a wife or children. Guiseppe died in 1953 and was survived by his wife and their four children. Nicola purchased the entire Rulli Brothers partnership from Guiseppe's estate.
 {¶ 3} Eventually, Nicola also died and Rulli Brothers was operated by his wife and three sons. Nicola's sons purchased the business from their mother. Frank Rulli, one of Nicola's sons, incorporated F.A.R. Food, bought out his brothers, and now owns and operates two Rulli Brothers stores in the Youngstown area.
 {¶ 4} Rulli Brothers employs around 120 people and spends more than $275,000.00 per year in radio, television, and newspaper advertising. Furthermore, Rulli Brothers uses a distinctive script in association with its advertising and places a script "R" on its bags. The Rulli name is well-known locally and is closely associated with the Rulli Brothers stores. Many customers refer to the store as "Rulli's" and make their checks out to "Rulli's."
 {¶ 5} After selling their half of the Rulli Brothers business to Nicola, Guiseppe's wife and children then sold produce at local flea and farmers markets under the name *Page 2 
"Rulli Produce." This practice continued for many years, first by Guiseppe's son, Rocco, and then by his son, Joseph. Under the name "Rulli Produce," Joseph sold produce and some deli items at various markets, but did not advertise the fact.
 {¶ 6} Joseph incorporated R. Fresh to operate his business and, in 2001 or 2002, leased a building near one of those flea markets and opened a store called "Rulli Produce and Deli." This store continued to sell produce, but also had an expanded deli, which included deli meat slicers, and other products which Joseph had not previously carried. Joseph also put a sign outside his market which prominently displayed the Rulli name with a script similar to that used by Rulli Brothers.
 {¶ 7} After establishing Rulli Produce and Deli, Joseph began to advertise in local newspapers. These advertisements confused some customers, who thought that the businesses were related and tried to use coupons for one business in the other business.
 {¶ 8} Appellees instituted a civil action on July 6, 2004, alleging trademark infringement, violations of Ohio's Deceptive Trade Practices Act and seeking an injunction and damages. The matter was heard by a magistrate, who concluded that the Rulli name was an enforceable trademark in regard to the grocery business in the Youngstown area and enjoined Appellants "from any and all further use of the name Rulli in connection with the operation of a grocery store, grocery business or in any such way that would result in confusion and interference with Plaintiff's right to the mark." Appellants timely objected to the magistrate's decision, but the trial court overruled those objections, adopted the magistrate's decision, and ordered the injunction into effect.
 Lanham Act {¶ 9} In the first of seven assignments of error, Appellants argue:
 {¶ 10} "The trial court erred when it applied the Lanham Act15 USC 1501 et. seq."
 {¶ 11} According to Appellants, the trial court erred by applying the Lanham Act, the federal law governing trademark infringement, to the present case since this case did not involve goods and services which substantially affect interstate or foreign commerce. Appellees respond that the scope of the Lanham Act falls within the United States Congress's power to regulate interstate commerce and, therefore, that this Act should *Page 3 
apply to the facts of this case.
 {¶ 12} Appellants' argument is not materially different than the argument rejected by the United States Supreme Court in Wickard v.Filburn (1942), 317 U.S. 111. In Wickard, a farmer owned and operated a small farm for many years, maintaining a herd of dairy cattle, selling milk, raising poultry, and selling poultry and eggs. It had been the farmer's practice to raise a small acreage of winter wheat. He would then sell a portion of the crop; use a portion to feed poultry and livestock on the farm, some of which were sold; to use some in making flour for home consumption; and to keep the rest for the following seeding. The federal government established quotas on the amount of wheat which he could grow on his farm, but he argued that these quotas were unenforceable against him since the production of wheat for his own use was local in nature and did not directly affect interstate commerce.
 {¶ 13} The United States Supreme Court disagreed. "[E]ven if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce and this irrespective of whether such effect is what might at some earlier time have been defined as `direct' or `indirect.'" Id. at 125. The effect of the farmer's home use of the home-produced wheat on interstate commerce "may be trivial by itself [but] is not enough to remove him from the scope of federal regulation where, as here, his contribution, taken together with that of many others similarly situated, is far from trivial." Id. at 127-128.
 {¶ 14} In this case, Appellants do not seriously challenge the constitutional validity of the Lanham Act. Instead, they contend that the issues involved in this case do not exert a substantial economic effect on interstate commerce. However, Appellants are incorrect.
 {¶ 15} As Wickard demonstrates, a party is subject to Congress's power to regulate interstate commerce, even if his contribution to interstate commerce is trivial, if the contribution of similarly situated parties would exert a substantial economic effect on interstate commerce. The Lanham Act regulates trademarks and their enforcement, issues which clearly effect interstate commerce. Although Appellants' individual effect on *Page 4 
interstate commerce may be minimal, the conduct of every business similarly situated to Appellants' exert a substantial economic effect on interstate commerce. Accordingly Appellants' arguments in their first assignment of error are meritless.
 Ohio Deceptive Trade Practices Act {¶ 16} In their second assignment of error, Appellants argue:
 {¶ 17} "The trial court erred when it applied the Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. 4165 et seq."
 {¶ 18} Appellants contend that they established that they had used the name "Rulli Products" since before 1969 and, therefore, that the Ohio Deceptive Trade Practices Act could not prevent them from using that trademark now. Appellees disagree, maintaining that the Appellants failed to show that they had consistently used that trademark since 1969 and, therefore, were subject to the Act.
 {¶ 19} Essentially, Appellants are challenging the trial court's finding that the Act should apply to them. Appellate courts are guided by the presumption that the findings of the trier-of-fact were correct.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. "[T]he trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. Accordingly, a factual finding of the trial court will be reversed only if it is found to be against the manifest weight of the evidence. Id. Judgments supported by some competent, credible evidence will not be reversed as against the manifest weight of the evidence. Id. at 80.
 {¶ 20} R.C. Chapter 4165, commonly known as the Deceptive Trade Practices Act, prohibits certain conduct likely to confuse consumers. A person "who is likely to be damaged by a person who commits a deceptive trade practice * * * may commence a civil action for injunctive relief against the other person." R.C. 4165.03(A)(1).
 {¶ 21} "(A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:
 {¶ 22} "* * *
 {¶ 23} "(2) Causes likelihood of confusion or misunderstanding as to the source, *Page 5 
sponsorship, approval, or certification of goods or services;
 {¶ 24} "(3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another." R.C. 4165.02(A)(2) and (3).
 {¶ 25} However, R.C. 4165.02(A)(2) and (3) "do not apply to the use of a service mark, trademark, certification mark, collective mark, trade name, or other trade identification that was used and not abandoned before September 25, 1969, if the use was in good faith and otherwise is lawful except for this chapter." R.C. 4165.04(B).
 {¶ 26} In this assignment of error, Appellants do not challenge the conclusion that their actions constituted an unfair trade practice or that Appellees were likely to be damaged by Appellants' actions. Instead, they only challenge the conclusion that R.C. 4165.04(B) did not exempt them from the strictures of R.C. Chapter 4165. Appellants' arguments are meritless.
 {¶ 27} Joe Rulli's grandfather co-founded Rulli Brothers Market with Frank Rulli's grandfather. Rulli Brothers is a grocery store located in the Youngstown-area which is well-known locally and specializes in Italian items. Its signs have distinctive lettering which people in the area generally recognize as belonging to Rulli Brothers.
 {¶ 28} After the death of Joe Rulli's grandfather in 1953, his family left the family business and began selling produce and deli items at flea and farmer's markets under the name "Rulli Produce." Joe Rulli's family did not advertise their business, had no permanent signage, and there is no evidence that they had a mark of any kind which distinguished their business. Joe Rulli wanted to make the business more permanent and opened "Rulli Produce and Deli" after the turn of the century. This store sold the same type of produce, had an "expanded deli" and many items which Joe Rulli's family had not sold before, and advertised itself in local newspapers. This new store also had signage which closely resembled that of Rulli Brothers.
 {¶ 29} Appellants contend that they are exempt from R.C. Chapter 4165 because they have been in business since before 1969. However, the conduct they are currently engaging in is not the same type of conduct they have been engaging in since before 1969. For instance, it is undisputed that the signage they are now using is new and that it *Page 6 
closely resembles the signage used by Rulli Brothers. Furthermore, the evidence supports the trial court's conclusion that Appellants' expansion is turning them more into a grocery store, like Rulli Brothers, than the farmer's market-type operation that it once was. There is a distinct difference between the way in which the trade name "Rulli Produce" was used prior to 1969 and the manner in which Appellants now wish to use that name.
 {¶ 30} Appellants' contend that they proved that they used the name "Rulli Produce" prior to 1969 and, therefore, that the Act does not apply to them. However, resolution of the issue is more nuanced, and not as straightforward as Appellants' try to frame it. The Act bars them from using the Rulli name because the manner in which they are using that trade name now is very different than the way they used it prior to 1969. Accordingly, the trial court did not err when it found that Appellants were not exempted from the strictures of R.C. Chapter 4165. Appellants' second assignment of error is meritless.
 Registration of Trademarks and Trade Names {¶ 31} In their third assignment of error, Appellants argue:
 {¶ 32} "The trial court erred when it failed to consider Ohio Rev. Code Ann. 1329.02 and 1701.05 to determine whether trademark infringement existed."
 {¶ 33} Appellants contend that they registered the trade name "Joe Rulli Produce" and "Rulli Produce and Deli" with the Ohio Secretary of State. They contend that since the Ohio Secretary of State concluded that these names were distinguishable from the other names registered in its office, that these names are conclusively different than "Rulli Brothers Market" and that this determination resolves this case in its entirety. Appellants' argument is meritless.
 {¶ 34} This issue was raised and decided by the Ohio Supreme Court inYounker v. Nationwide Mut. Ins. Co. (1963), 175 Ohio St. 1. In that case, Younker used the word "securance" in connection with the sale of insurance services and his customers began to associate that word with the unique services he provided. Afterward, Nationwide wanted to use that word in its advertising and filed an application in the United States Patent Office to register the word as a service mark. Younker then instituted an action to enjoin *Page 7 
Nationwide from using that term. The Ohio Supreme Court held that "one who adopts and uses a name in connection with his business or products acquires the right to the use thereof over one who subsequently registers such name or mark." Id. at 7.
 {¶ 35} This holding is directly contrary to Appellants' position. They contend that the registration of their trade name conclusively allows them to use that trade name in any way they wish. However,Younkers held that one who registers a trade name does not automatically get to use that trade name. This conclusion is further supported by the fact that R.C 1329.08 gives the Ohio Secretary of State the authority to cancel a registration which has been granted. Accordingly, Appellants' arguments in their third assignment of error are wholly meritless.
 Defenses {¶ 36} In their fourth assignment of error, Appellants argue:
 {¶ 37} "The trial court erred when it found there were no defenses supported by the evidence."
 {¶ 38} Appellants claim that they proved two defenses to their use of the name "Rulli Produce and Deli" in regard to the operation of a grocery store, concurrent use and acquiescence, which excused an otherwise impermissible use of Appellees' trademark. Appellants' arguments are again meritless.
 {¶ 39} As described in the second assignment of error, Appellants had not used Appellees' trademarks in a way likely to cause confusion until they opened their permanent store. They have shown that they used the name "Rulli" in connection to the sale of produce at the same time as Appellees used "Rulli" in connection to the grocery store. However, Appellants did not demonstrate that they used the name in the context of a grocery business or signage similar to Appellees' signage prior to opening their permanent store. Based on this evidence, the trial court correctly concluded that Appellants failed to establish concurrent use.
 {¶ 40} Furthermore, the doctrine of acquiescence applies in trademark cases "only in those cases where the trademark owner, by affirmative word or deed, conveys its implied consent to another." U.S. Playing CardCo. v. The Bicycle Club (1997), *Page 8 119 Ohio App.3d 597, 605. Appellants did not introduce any evidence showing that Appellees affirmatively consented to Appellants' use of their trademark.
 (¶ 41} The record does not show that the trial court failed to consider the doctrines of concurrent use and acquiescence. Instead, it shows that it considered and rejected the application of those doctrines. Furthermore, the trial court's conclusion is supported by the evidence. Appellants' fourth assignment of error is meritless.
 Secondary Meaning {¶ 42} In their fifth assignment of error, Appellants argue:
 {¶ 43} "The trial court erred when it found secondary meaning and consequent trademark status for the Rulli Brother's name."
 {¶ 44} Appellants' basic argument is that Appellees are not entitled to the protection of trademark law, since the mark they are protecting is merely a family surname.
 {¶ 45} In order to determine whether a word is entitled to trademark protection, a court must first determine which of four categories that word falls into: 1) generic or common descriptive; 2) merely descriptive; 3) suggestive; or 4) arbitrary or fanciful. Miller BrewingCo. v. Heileman (C.A.7, 1977), 561 F.2d 75, 79, certiorari denied (1978), 434 U.S. 1025. A generic or common descriptive term, such as "chair," is not entitled to trademark protection under any circumstances, while suggestive terms, such as "True Grip," and arbitrary or fanciful terms, such as "Exxon," are entitled to trademark protection without the need to show that they have a secondary meaning. Id. Words that are merely descriptive, such as a family name, are entitled to trademark protection only if it is shown that they have acquired a secondary meaning. Id.
 {¶ 46} A word has a secondary meaning when "the primary significance of the term in the minds of the consuming public is not the product but the producer." Pizzazz Pizza Restaurant v. Taco Bell Corp. (N.D.Ohio 1986), 642 F.Supp. 88, 92. Courts have recognized five factors to examine in order to determine whether a word has acquired a secondary meaning: 1) the amount and manner of advertising; 2) the volume of sales; 3) length and manner of use; 4) direct consumer testimony and; 5) consumer surveys. Id. *Page 9 
 {¶ 47} In this case, Appellees demonstrated that they had been advertising the "Rulli Brothers" grocery stores on radio, television, and in newspapers for decades. Appellees' investment in advertising was substantial, spending between $275,000.00 and $390,000.00 per year on advertising between 2003 and 2005. Appellees had also made themselves a presence at local fairs for forty to fifty years.
 {¶ 48} Evidence is limited on the volume of Appellees' sales. However, Frank Rulli testified that about 25% of its budget was spent on advertising, which means that Appellees' yearly budget is more than $1,000,000.00. Furthermore, Appellees employ about 120 people in its two stores. These facts support a conclusion that Appellees have a relatively large volume of sales in order to support these expenditures.
 {¶ 49} The evidence is undisputed that Appellees and their predecessors first opened a "Rulli Brothers" store in the Youngstown, Ohio, area around eighty years ago.
 {¶ 50} The testimony also revealed that customers commonly referred to the store as "Rulli's" or "Rulli Brothers." Furthermore, some customers even made their checks out to "Rulli's." There was no evidence of any customer survey.
 {¶ 51} This evidence clearly supports the trial court's conclusion that the name "Rulli" had taken on a secondary meaning in the Youngstown area. For decades, customers had associated that name with a grocery store specializing in Italian goods and the name came synonymous with the store.
 {¶ 52} In many regards, this case is similar to one decided by the Ninth District in Yocono's Restaurant, Inc. v. Yocono (1994),100 Ohio App.3d 11. In that case, two brothers opened and operated an Italian restaurant called "Yocono's" until one brother, James, bought the other one, Nunzie, out. Five years after leaving the partnership, Nunzie opened a new restaurant, called "Marisa's Café Italia" and five years after that, Nunzie's son, who managed Marisa's, changed its name to "Nunzie Yocono's Italian Restaurant." On the new signs, the word "Yocono's" was printed in much larger letters than the other parts of the restaurant's new name. "Yocono's" was also printed on a different color background than the color used as background for the other words that made up the new name. As a result, the most noticeable part of the new name was the *Page 10 
word "Yocono's." James sought to enjoin Nunzie from using the family name to operate an Italian restaurant. The trial court granted the injunction and Nunzie appealed.
 {¶ 53} The appellate court affirmed the trial court's decision. It noted that James had advertised "Yocono's" in newspapers and donated food to various organizations as a form of advertising. Over 48,000 people dined there in a three-month period in 1992, which illustrated the volume of sales. The name "Yocono's" had been used in connection with James's restaurant for eighteen years. Finally, customer testimony showed that they associated the Yocono name with that restaurant.
 {¶ 54} The evidence in this case is even more convincing than that inYocono's. Rulli Brothers has been in business for around eighty years, has a relatively large sales volume, engages in substantial local advertising, and customers associate the Rulli name with this business. Based on these facts, the trial court did not err when it concluded that the name "Rulli" had acquired a secondary meaning in the Youngstown area. Appellants' fifth assignment of error is meritless.
 Counterclaim {¶ 55} In their sixth assignment of error, Appellants argue:
 {¶ 56} "The trial court erred when it ruled that appellants abandoned their counterclaim at trial."
 {¶ 57} Appellants contend that their counterclaim was neither withdrawn nor dismissed and that they introduced facts in support of their claim, so the trial court should not have treated the counterclaim as if it had been abandoned.
 {¶ 58} Appellants' counterclaim against Appellees asked for a declaration that the Appellants acquired the trade name "Rulli" first in time, that Appellees were infringing on that trade name, that the name "Rulli" had no secondary meaning and that Appellants' use of the name was fair. However, Appellants did not establish that they were entitled to any of these forms of relief.
 {¶ 59} First, there is absolutely no evidence in the record showing that Appellants used the name "Rulli" in relation to the sale of any kind of goods in the Youngstown area before "Rulli Brothers" was established. The basis for this claim appears to be *Page 12 
Appellants' belief, addressed above, that registration of a trademark trumps the prior use of that trademark. However, this is not the law. Since Appellants did not introduce any evidence in support of this claim, the trial court did not err when it concluded that this claim was abandoned.
 {¶ 60} Second, Appellants did not introduce any evidence which would support their claim that the name "Rulli" had not acquired a secondary meaning. None of Appellants' evidence contradicted any of the evidence supporting the trial court's conclusion that the name had acquired a secondary meaning. Accordingly, it does not appear that the trial court erred when it found that Appellants abandoned this claim as well.
 {¶ 61} Finally, Appellants did not introduce any evidence showing that their use of the Rulli name in the operation of Rulli Produce and Deli was fair. They did not challenge the fact that their signage was similar to Appellees' signage or that their advertisements misled customers into believing that Appellants' business was related to Appellees' business.
 {¶ 62} At trial, Appellants' efforts were focused on defending against Appellees' claims, primarily by trying to establish that the Ohio Deceptive Trade Practices Act did not apply to them, and they did not introduce any evidence in support of their own counterclaims. The trial court did not err when it concluded that Appellants abandoned their counterclaims and Appellants arguments to the contrary are meritless.
 Analogous Cases {¶ 63} In their final assignment of error, Appellants argue:
 {¶ 64} "The trial court erred when it failed to follow the decision ofFriedman Transfer and Construction Co., Inc. v. Friedman Transfer andStorage, 76 Ohio L.Abs. 486, 1956 Ohio App.LEXIS 798."
 {¶ 65} Appellants claim that Friedman Transfer Construction Co.,Inc. v. Friedman (1956), 76 Ohio L. Abs. 486, a decision out of this court, demonstrates that the trial court's decision is incorrect. However, that case actually supports the trial court's decision. *Page 12 
 {¶ 66} In Friedman, a business owner had established a hauling and trucking business named "Friedman Transfer Construction." A man named Arrel Friedman wanted to start his own hauling and trucking company and named it "Arrel Friedman Transfer Storage." The plaintiffs successfully enjoined Arrel Friedman's use of the Friedman name in this way and this court affirmed that decision, noting that courts will not normally enjoin all use of a surname, but will enjoin such use if the use of a surname will deceive the public into thinking that the new business is the established business. The court did not disallow Arrel Friedman from using his name; it merely enjoined him from using the name "Friedman" in conjunction with the words "transfer," "hauling," "cartage," or "construction."
 {¶ 67} This is precisely what is happening in this case. The trial court concluded that Appellants' current use of the Rulli name was likely to confuse the public. Accordingly, the trial court did not enjoin Appellants from all use of the name, just certain uses which interfered with that of Appellees' business. Friedman supports the trial court's conclusion, rather than demonstrating that it is somehow incorrect. Appellants' arguments to the contrary are meritless.
 Conclusion {¶ 68} In each of their seven assignments of error, Appellants contend that the trial court somehow erred when it ruled that Appellees had an enforceable trademark which Appellees were infringing upon. However, Appellants' arguments are meritless. Accordingly, the judgment of the trial court is affirmed.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1